# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

| | |
|---|---|
| **WILLARD E. SMITH,** | **3:22-CV-03011-RAL** |
| **Plaintiff,** | |
| **vs.** | **REPORT AND RECOMMENDATION ON MOTION TO DISMISS AND FOR SANCTIONS** |
| **KATHLEEN J. SMITH,** | |
| **Defendant.** | |

Frustrated, flummoxed, and frazzled are some of the words the Court would use to describe Willard "Bud" Smith and his counsel's conduct in this case. The Court's patience has been tested to the limit. Despite several escalating attempts by the Court, Bud and his counsel's noncompliant behavior has persisted without a palpable resolve to change. Given the circumstances, dismissal of the case and an expense award are justified as discovery sanctions. The Court therefore recommends that Kathleen "Kathy" Smith's motion, seeking both, be granted.

## BACKGROUND

Bud sued his sister, Kathy, in state court for breach of an implied trust, claiming that Kathy has held certain land she purchased decades ago in trust for his benefit.[1] He alleges that he provided "consideration" for the land along with funding for the same.[2] After Kathy removed the case to federal court,[3] she served Bud with discovery requests, asking for his tax returns and other information to support his claims.[4] When Bud finally did respond to the requests, his answers were incomplete and unresponsive.[5] His supplemental answers were just as unresponsive, omitting many of the requested returns.[6]

Irked, Kathy filed a motion to compel.[7] The Court granted the motion, in part, ordering that Bud supplement his responses and produce his tax returns by a set date.[8] Bud, however, did not do so, failing to supply a multitude of returns.[9]

At the first settlement conference, Bud lied about possessing copies of communications he had with his now deceased sister, Connie, relating to the claims and

---

[1] Dkt. No. 1-1.
[2] *Id*. at 2-4, 6.
[3] Dkt. No. 1.
[4] Dkt. No. 26-1, at 9–10.
[5] Dkt. No. 26-4, at 3.
[6] Dkt. Nos. 26-7, at 2; 26-9; 26-10.
[7] Dkt. No. 24.
[8] Dkt. No. 38.
[9] Dkt. No. 50-3, at 4 (Bud Dep. Tr. at 157:10-18).

defenses of this case.[10] He acknowledged the lie later on,[11] commenting that it was to "get a rise out of Kath[y]."[12] He also admitted that there was no reason he would not be able to produce his tax returns,[13] saying that he had returns for every year (except possibly 2013)[14] and had given them to his counsel.[15] Despite these representations, Bud and his counsel continued to withhold these returns.[16]

This led Kathy to file her second motion to compel.[17] The Court ordered Bud to submit an affidavit within two weeks detailing how he would rectify the issue of the missing tax returns.[18] The affidavit Bud submitted was a collection of vague excuses.[19] Bud rambled about finding tax information in a bag of trash at Kathy's house, delivering the information to his counsel, and blaming Hurricane Katrina (2005) for being unable to produce his returns.[20] Bud's counsel assured the Court that he "researched requesting tax transcripts" but, had not actually requested anything.[21]

After this unsatisfactory response, the Court issued a decision chastising Bud for not requesting "his missing tax returns from the IRS long before now" and telling him

---

[10] Dkt. No. 49, at 1 ¶ 4.
[11] Dkt. No. 50-3, at 3 (Bud Dep. Tr. at 125:2-17).
[12] Dkt. No. 53, at 3.
[13] Dkt. No. 50-3 at, 4 (Bud Dep. Tr. at 159:6-9).
[14] *Id*. at 158:2-5.
[15] *Id*. at 159:6-15.
[16] Dkt. No. 50, at 2, ¶ 14.
[17] Dkt. No. 47.
[18] Dkt. No. 54.
[19] Dkt. No. 60, at 1-2.
[20] Dkt. No. 60, at 1.
[21] Dkt. No. 59, at 1-2.

that "feigning ignorance does him no good."[22] The Court ordered Bud to request, pay for, and provide Kathy with as many returns as he could get from the IRS and to find and disclose to her all other returns he had.[23] The Court also required Bud to pay Kathy's attorneys' fees.[24] And the Court admonished Bud about the potentially "steep" consequences of not complying with its order.[25]

But Bud and his counsel did not produce the tax returns, or even properly request them from the IRS.[26] Instead, they offered a few "signature pages" from the returns, baiting that they "expect[] to find the whole returns soon."[27] Unconvinced that Bud and his counsel were making good faith efforts to obtain the tax returns, Kathy asked for confirmation that Bud had actually requested his returns from the IRS.[28] Her counsel made this request three times.[29] Bud's counsel, for whatever reason, did not respond.[30]

Having prevailed on her second motion to compel, Kathy filed an affidavit for attorneys' fees.[31] Under the local rules, Bud's response was due three weeks later.[32] Bud and his counsel even got an extra reminder of their deadline from the Court.[33] But they

---

[22] Dkt. No. 61, at 7.
[23] *Id*. at 14.
[24] *Id*. at 15.
[25] *Id*. at 13.
[26] Dkt. No. 84, at 3, ¶ 13.
[27] Dkt. No. 76-2, at 1.
[28] Dkt. No. 76-3 at 1.
[29] Dkt. Nos. 76-3; 76-4.
[30] *Id*.
[31] Dkt. No. 65.
[32] D. S. D. Civ. LR 7.1(B).
[33] Dkt. No. 76-5.

still missed their deadline to object to the fee request.[34] Eventually, they did object to the request—ten days late.[35]

The parties subsequently agreed to a second settlement conference, which the Court was to preside over.[36] The Court explicitly ordered the parties and their counsel to submit confidential settlement statements to the Court and settlement offers to each other within a specified number of days.[37] When those days passed and it had received nothing from Bud's counsel, the Court sent out an email, directing that Bud's confidential statement "be sent to me today" and that settlement offers be exchanged that same day.[38]

Perturbed by another failed settlement bid[39] and what she viewed as a litany of discovery violations, Kathy moved to dismiss the case and for sanctions.[40]

In their reply to the dismissal motion, Bud and his counsel revealed that they waited two and a half months to even submit a request to the IRS for the missing tax returns.[41] And they did so knowing that the Court had earlier ordered Bud to "promptly" request his returns.[42]

---

[34] Dkt. No. 70.
[35] Dkt. No. 71.
[36] Dkt. No. 64, at 1.
[37] *Id*. at 2.
[38] Dkt. No. 76-6.
[39] Dkt. No. 72.
[40] Dkt. No. 74.
[41] Dkt. Nos. 84, at 3, ¶ 13; 76, at 3.
[42] Dkt. No. 61, at 14.

Upon learning of this, the Court ordered Bud to appear and show cause why he should not be held in contempt and sanctioned for his failure to comply with the Court's orders.[43] Less than 24 hours before the show cause hearing, Bud, through his counsel, produced more of his tax returns.[44] Bud's counsel had these returns in their possession for seven weeks before providing them.[45]

## DISCUSSION

### A. Dismissal

Kathy moves to dismiss Bud's entire complaint under Rules 37 and 41 of the Federal Rules of Civil Procedure.[46] Because the Court concludes that dismissal is warranted under Rule 37(b), there is no need to address Kathy's alternative ground for dismissal, premised on Rule 41(b).

### 1. Legal Standard

"Under Federal Rule of Civil Procedure 37(b)(2)(A), the district court may impose sanctions for discovery violations, including dismissal of the action in whole or in part."[47] "Dismissal may be considered as a sanction only if there is: (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other

---

[43] Dkt. No. 79.

[44] Dkt. No. 84-6.

[45] Dkt. No. 84-2, at 1.

[46] Dkt. Nos. 74; 75.

[47] *Schubert v. Pfizer, Inc.*, 459 F. App'x 568, 572 (8th Cir. 2012).

party."[48] The "willful and bad faith conduct must also be the source of the prejudice to the defendant."[49] "[B]efore dismissing a case under Rule 37(b)(2), the court must investigate whether a sanction less extreme than dismissal would suffice, *unless* the party's failure was deliberate or in bad faith."[50] The sanction of dismissal must be "just."[51] And because it is "among the harshest of sanctions," dismissal must be "closely scrutinized."[52] But dismissal may be appropriate "when a party demonstrates a 'blatant disregard of the [c]ourt's orders and the discovery rules,' which prevents the opposing party from fairly litigating its case."[53] One such example is when the plaintiff fails to produce his tax returns in violation of a court order, which results in prejudice to the defendant.[54]

## 2. Orders Compelling Discovery

---

[48] *Keefer v. Provident Life and Acc. Ins. Co.*, 238 F.3d 937, 940 (8th Cir. 2000) (citing *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)).

[49] *Hairston v. Alert Safety Light Prods., Inc.*, 307 F.3d 717, 719 (8th Cir. 2014) (citing *Denton v. Mr. Swiss of Missouri, Inc.*, 564 F.2d 236, 241 (8th Cir. 1977)).

[50] *Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) (citations omitted).

[51] *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982); Fed. R. Civ. P. 37(b)(2)(A)(v).

[52] *Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014).

[53] *Atmosphere Hosp. Mgmt., LLC v. Curtullo*, No. CIV. 13-5040, 2015 WL 4600372, at *9 (D.S.D. July 29, 2015) (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999).

[54] *Schubert*, 459 F. App'x at 572-73.

The Court entered three orders compelling Bud to produce his tax returns and information about them. The first one was on October 16, 2023, which directed Bud to produce 18 years of missing tax returns, he or his accountant, Nina Kavich, had in their possession, by November 15, 2023.[55] The second, on April 17, 2025, required Bud to (1) "promptly request, and pay for, as many tax returns from the IRS as the agency allows and provide Kathy with copies upon their receipt" and (2) "attempt, in good faith, to locate and disclose to Kathy all requested tax returns, not obtainable from the IRS, that are in his possession, custody, or control."[56] The Court also entered a third discovery order, during the July, 24, 2025 show cause hearing, commanding Bud and his counsel to (1) produce Bud's tax transcripts by July 28, 2025, and (2) obtain a tax compliance report.[57]

### 3. Willful Violation

"As used in the context of Rule 37(b), willful 'implies a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance.'"[58] Willfulness is "apparent where the party who has failed to comply with the discovery request was able to comply."[59] Willfulness can be implied when "the non-complying

---

[55] Dkt. Nos. 37 (FTR audio recording at 1:48:22-1:49:30 (Oct. 16, 2023)); 38.

[56] Dkt. No. 61, at 14.

[57] Dkt. No. 80 (FTR audio recording at 2:14:31-2:14:57, 2:16:38-2:19:17 (July 24, 2025)).

[58] *Coral Grp., Inc. v. Shell Oil Co.*, 286 F.R.D. 426, 436 (W.D. Mo. 2012) (quoting *Omaha Indian Tribe, Treaty of 1854 with U.S. v. Tract I – Blackbird Bend Area*, 933 F.2d 1462, 1468 (8th Cir. 1991)).

[59] *Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1375 (N.D. Iowa 1996).

party ha[s] repeatedly failed to produce discovery in response to [opposing] counsel's repeated requests and court orders."[60]

Bud and his counsel have willfully disregarded their discovery obligations for over two years. On November 1, 2022, Kathy requested Bud's tax returns back to 1995.[61] Bud only produced portions of them.[62] Kathy has made multiple attempts, over many months, to obtain the remaining returns, to no avail.[63] She finally moved to compel seeking, among other things, the missing tax returns.[64] In response to the motion, Bud said he believed Kathy or accountant Kavich had the returns and tax information that he did not have in his possession.[65] Come to find out that Bud had not used Kavich or any accountant to prepare his returns since 2015.[66] At his September 2024 deposition, Bud affirmed that there was no reason he would not be able to produce the missing returns and that he had given them to his counsel within the last six months.[67] Bud's expert, Eric Hanson, testified in his deposition a few months later that he believed he "had every tax return" of Bud's from 1987 to 2021.[68]

---

[60] *Garst*, 917 F. Supp. at 1375. (citing *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992)).
[61] Dkt. No. 26-1, at 7.
[62] Dkt. Nos. 26-10; 26-11, at 4.
[63] Dkt. Nos. 26-4, at 3; 26-7, at 2-3; 26-10.
[64] Dkt. No. 25, at 12-13.
[65] Dkt. No. 37 (FTR audio recording at 1:46:22-1:46:55).
[66] Dkt. No. 50-3, at 4.
[67] *Id.*
[68] Dkt. No. 50-8, at 2-3.

On February 28, 2025, Kathy moved to compel again based, in part, on Bud's failure to provide her with the missing tax returns.[69] Bud's counsel admitted during a hearing on Kathy's motion, that they had no reason for not trying to obtain the outstanding returns and that they simply "neglected" to do so.[70] The Court ordered Bud and his counsel to file an affidavit within two weeks of the hearing, detailing what actions they had taken to acquire the returns.[71] In his affidavit, Bud stated under oath that he had "rescued a trash bag containing [his] tax information from Kathy's house," and produced as many returns as he could locate.[72] He also affirmed that Hurricane Katrina, which occurred in August 2005, flooded his house and destroyed just about everything in it.[73] Counsel declared in his affidavit that he (1) was preparing the returns he had received and "discovered" in a binder, (2) had the necessary forms to request the last seven years of returns and three years of transcripts, and (3) had talked to Bud about finding the returns still missing.[74]

Afterward, the Court ordered Bud to promptly request all available tax returns from the IRS and to make a good-faith effort to locate all the returns Kathy requested and provide them to her.[75] The Court found Bud's excuses for not producing his returns

---

[69] Dkt. No. 48, at 1-6, 9-11.

[70] Dkt. No. 54 (FTR audio recording 11:17:52-11:18:20 (Mar. 24, 2025)).

[71] Id. at 11:44:27-11:46:20.

[72] Dkt. No. 60, at 1.

[73] *Id*.

[74] Dkt. No. 59, at 1.

[75] Dkt. No. 61.

"unconvincing," made clear that it was "unhappy with how [he] has conducted himself" through discovery, and warned him that "[f]urther sluggishness or other discovery issues will be scrutinized, and the repercussions may be steep."[76]

Consistent with Rule 37(a)(5), the Court ordered Bud to pay Kathy's expenses, including attorneys' fees, "no later than 30 days from the date of this order."[77] When Bud did not pay the expense award, the Court issued a show cause order, directing him to appear and explain why he had not paid the expenses and why he had not produced the tax returns he was twice told to turn over.[78] Bud appeared with counsel, and the Court ordered them to supply his tax transcripts in four days and procure a tax compliance report.[79] Thus far, neither the transcripts nor the reports have been produced.[80] But on the eve of the July 24 show cause hearing, Bud miraculously came up with several years of missing returns.[81] Still, he has yet to provide full copies of returns for nine or ten years.[82]

Bud's counsel takes responsibility for the compliance issues since the Court's April 17 order, confessing that the production delays were caused by counsel's communication failings, inattention, mistakes, and negligence.[83] Nonetheless, things did

---

[76] *Id.* at 7, 11, 13.
[77] Dkt. No. 73, at 4.
[78] Dkt. No. 79.
[79] Dkt. No. 80 (FTR audio recording at 2:16:55-2:18:11 (July 24, 2025)).
[80] Dkt. No. 93, at 1.
[81] Dkt. No. 84, at 3, ¶ 15.
[82] Dkt. No. 93, at 1.
[83] Dkt. No. 82, at 2-3.

not seem to improve after the order was entered. Indeed, even when informed that Kathy sought to dismiss the case, Bud and his counsel waited until the day before the July 24 hearing to deliver some of the outstanding tax returns.[84] Bud had not paid his Court ordered expenses—which were past due—when he appeared on July 24 and tarried another two weeks before ultimately remitting them.[85]

Missing deadlines has been a recurring problem here. Bud and his counsel did not respond to Kathy's original motion to dismiss—on statute of limitations grounds— by the required deadline.[86] Although the district judge found counsel's nonfeasance to be excusable neglect, the judge put Bud and counsel on notice of the importance of meeting case deadlines.[87]

Bud and his counsel though continued to miss deadlines. Some have already been discussed. But there are more. His objection to Kathy's May 6, 2025, expense request was filed ten days late.[88] And his settlement conference statement and offer were tardy and submitted right before the conference. [89]

Since 2023, Bud and his counsel have willfully violated court orders and snubbed deadlines. They have repeatedly failed to engage in the case, stonewalled discovery, and flouted Kathy's continued requests for Bud's tax returns and other information.

---

[84] Dkt. Nos. 84-3; 84-6.
[85] Dkt. Nos. 80 (FTR audio recording at 1:22:58-1:23:23); 89.
[86] Dkt. No. 16, at 2.
[87] *Id.* at 3-5.
[88] Dkt. Nos. 60; 70- 71; 73, at 1.
[89] Dkt. No. 76-6.

### 4.  Prejudice

"A finding of 'prejudice' under Rule 37(b) is proper if the failure to make discovery impairs an opponent's ability to determine the factual merits of a party's claim."[90] Prejudice exists when a plaintiff forces a defendant to spend a great deal of time "hounding" the plaintiff for discovery and expending costs to obtain compliance orders.[91]

Bud has prejudiced Kathy by impairing her ability to investigate his claims and prepare a defense, by causing her to incur unnecessary expenses to obtain his tax returns and other discovery, and by prolonging this case.[92]

The missing tax returns are material to the implied trust claim Bud raises. Besides showing Bud's income and expenses and whether he treated the property at issue as his own, the returns bear on the alleged agreement between Bud and Kathy that he says, gave rise to an implied trust. The returns would also help explain Bud's financial situation, his need for assistance from the properties or some other source, and his motivation and timing in bringing the case.

Some of Bud's missing tax returns may no longer be available. Had Bud and his counsel acted promptly and diligently after receiving Kathy's November 2022 discovery

---

[90] *Valner v. O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003).

[91] *Schoffstall*, 223 F.3d at 824; *Coral Grp.*, 286 F.R.D. at 436.

[92] *Farlee v. Hausman*, No. 3:19-CV-03013, 2021 WL 327509, at *3 (D.S.D. Feb. 1, 2021); *Atmosphere*, 2015 WL 4600372, at *11.

requests, they likely would have been able to secure missing returns. Because the IRS only retains returns for seven years, some of Bud's returns retrievable in 2022 are probably no longer available. That would include at least the 2016 and 2015 returns, which have never been produced.[93] If these previously accessible returns are no longer obtainable from the IRS and Bud cannot produce them, then Kathy's ability to defend herself is prejudiced.

Kathy has also been prejudiced by the outlay in legal expenses she has had to incur to address Bud and his counsel's conduct and discovery recalcitrance. These include payment of expenses for motions to compel, for dismissal, and for sanctions; plus, many hearings and correspondence with counsel in an effort to obtain Bud's tax returns and other undisclosed information. To date, Kathy has not received all the information the Court ordered be produced. And the prospect that she will get everything is dim.

Finally, Bud and his counsel's dilatory actions have delayed and unduly lengthened the case. Bud filed suit more than three years ago, and the case is still far from being trial-ready. Most of the continuances Kathy has requested have been because of Bud and his counsel's foot-dragging in discovery.[94] Bud cannot cause the

---

[93] *See* Dkt. No. 93, at 1.
[94] *See e.g.* Dkt. No. 58-3.

delay in the discovery process and then contend that Kathy has not been prejudiced just because she was the one who asked for more time.

### 5. Deliberate and Bad Faith Conduct

Bud and his counsel's failures—again and again—to respond to discovery requests and obey orders of the Court constitute deliberate and bad-faith conduct. "[D]eliberateness includes failure to respond to discovery requests, even with extensions and failure to provide full information after a court order."[95] It also includes repeatedly failing to respond to discovery requests and comply with court orders.[96]

A person shows bad faith "by delaying or disrupting the litigation or by hampering enforcement of a court order."[97] In this sense, the concept resembles the proscription in Rule 11 that no paper be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[98]

As pointed out earlier, Bud and his counsel's response to Kathy's requests for information and to orders from the Court were untimely, incomplete, and slipshod; even after being warned of "steep" consequences if they continued.[99] Their acts and omissions were deliberate.

---

[95] *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) (citations omitted).
[96] *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1208 (8th Cir. 1983).
[97] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).
[98] Fed. R. Civ. P. 11(b)(1).
[99] Dkt. No. 61, at 13.

The lengthy pattern of noncompliant conduct, by Bud and his counsel, establishes bad faith. So too does Bud's changing stories about whether documents exist or not,[100] his inconsistent statements under oath,[101] and last but not least, the comment he made to "get a rise" out of Kathy, which caused her additional time and expense.[102]

That some of the disobedient conduct results from failures and neglect of Bud's counsel does not save him from dismissal.[103] A party "chooses counsel at his peril" and a counsel's "disregard of his professional responsibilities can lead to extinction of [a] client's claims."[104]

### 6. Schubert

*Schubert v. Pfizer, Inc.*[105] is factually much like Bud and Kathy's case. In *Schubert*, the Eighth Circuit affirmed the dismissal of the case with prejudice for willful violations of discovery orders.[106] *Schubert* involved a plaintiff's failure to produce his tax returns and a much shorter grace period than Bud has had.[107] The plaintiff tried to play the "counsel is at fault" card, arguing that the discovery "violations were simply the result of inexperienced counsel doing the best he could[.]"[108] The appeals court disagreed,

---

[100] Dkt. Nos. 49, at 1 ¶ 4; 50-3, at 3 (Bud Dep. Tr. at 125:2-17).
[101] *Compare* Dkt. No. 50-3, at 3 (Bud Dep. Tr. at 159:6-9) *with* Dkt. Nos. 50-8, at 2-3 *and* 50, at 2, ¶ 14.
[102] Dkt. No. 53, at 3.
[103] *Boogaerts*, 961 F.2d at 768 ("it is of no consequence that the discovery abuse perpetrated was by counsel rather than the plaintiff-client.")
[104] *Id*.
[105] 459 F. App'x 568, 572 (8th Cir. 2012).
[106] *Schubert*, 459 F. App'x at 569-71.
[107] *Id*. at 571.
[108] *Id*. at 573.

noting the pattern of violations.[109] The Court here similarly rejects any attempt to cast blame—on counsel—for the many violations. Like *Schubert*, the Court concludes that dismissal is warranted.

### B. Expenses

Kathy seeks reimbursement for her expenses, including attorneys' fees, for all her troubles.[110] She includes affidavits, detailing the time and expense she and her counsel have spent battling Bud and his counsel.[111]

Rule 37(b)(2)(C) requires a court to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expenses unjust." Rule 16(f)(2) imposes similar obligations on the court for "any noncompliance with this rule."

Both Bud and his counsel are disobedient parties. They failed to comply with discovery requests and orders. Their conduct was willful, deliberate, and in bad faith. Together, they should share the burden of paying Kathy's expenses, including attorney's fees. The Court therefore recommends that Kathy be granted an expense award, but for a lesser amount than she requests.

---

[109] *Id.*
[110] Dkt. Nos. 75, at 20; 87, at 19.
[111] Dkt. Nos. 89; 92.

The Court has already approved attorney Brost's rate of $290.00 per hour,[112] and Bud did not object to it.[113] The hourly rate is reasonable for someone of Brost's experience and within the range of rates charged in the area for like services.[114] Attorney Roche's $385.00 per hour rate, however, is too high and must be pared down. A rate of $350.00 per hour is reasonable and more in line with attorneys similarly situated.[115]

Kathy seeks reimbursement for 37 hours of attorney time and $10,730.00 in attorney's fees for work done on 39 pages of briefs.[116] That works out to about 1 hour of attorney time and $275.00 for each page of the briefs. These per page rates are a bit excessive and should be trimmed. Reviewing Kathy's last four briefs, the Court found a little over nine pages of carryover citations and arguments.[117] It would be unjust to compensate Kathy for work already done and reiterated in her dismissal motion briefs. So a fee reduction of $2,494.00 (9.07 pages x $275.00 per page = $2,494.00) is in order.

Accounting for Kathy's success[118] and the purpose for imposing sanctions—to punish the disobedient party and that party's counsel for their failings[119]—the Court

---

[112] Dkt. No. 73.

[113] Dkt. No. 71.

[114] *Buergofol v. Omega Liner Co., Inc.*, No. 4:22-CV-04112-KES, 2024 WL 492769, at *2-4 (D.S.D. Feb. 8, 2024); *see also Libertarian Party of S. Dakota v. Krebs*, No. CIV 15-4111, 2018 WL 4762966, at *4 (D.S.D. Oct. 2, 2018) (rates of $250-300 per hour for South Dakota counsel were reasonable in 2018).

[115] *Paclik v. CIY Foods, Inc.*, No. 4:23-CV-04131-KES, 2024 WL 3567412, at *5 (D.S.D. July 29, 2024); *Buergofol*, 2024 WL 492769, at *4.

[116] Dkt. No. 92, at 2.

[117] *See* Dkt. Nos. 48, at 2-3, 6-9; 57, at 2-5, 7, 9-10; 75, at 2-3, 9, 11, 13, 16-17, 19-20; 87, at 1-2, 5-6, 10, 12-13, 15, 17-19.

[118] *See El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010).

[119] Fed. R. Civ. P. 37(b).

concludes that a reasonable and just expense for Bud and his counsel to pay is $11,161.62, a $2,656.06 haircut from what Kathy asked for. The Court's calculations for such an expense award are as follows:

Attorney Roche: $ 350 x 0.2 hours = $70.00

Attorney Brost: $ 290 x 36 hours = $10,440.00

Subtotal = $10,510.00

South Dakota Sales Tax = $ 651.62

Total Recommended Award = $11,161.62

## CONCLUSION

For more than three years, Bud and his counsel have (1) failed to abide by court orders, deadlines, and make timely submissions, (2) responded with inconsistencies and falsehoods, (3) withheld information, and (4) delayed the progression of the case. Their misconduct has been consistent and repetitive and, more importantly, done willfully, deliberately, and in bad faith. And their derelictions have been prejudicial, affecting Kathy's ability to defend herself, causing her to incur significant additional expenses, and forestalling resolution of the case. Despite multiple warnings and second chances from the Court and Kathy's counsel, Bud and his counsel have continued their noncompliant behavior and not changed. Dismissal with prejudice is called for and so are sanctions.

## RECOMMENDATION

For these reasons, and based on the record now before the Court, it is:

RECOMMENDED that Kathy's motion to dismiss[120] be granted and Bud's complaint[121] be dismissed with prejudice under Rule 37(b)(2)(A)(v). Because the discovery violations were willful, deliberate, and done in bad faith, the Court need not consider a lesser sanction.[122] It is further

RECOMMENDED that Kathy's motion for sanctions[123] likewise be granted and Bud and his counsel be ordered to pay Kathy $11,161.62 in accordance with Rule 37(b)(2)(C) and 16(f)(2), there being no showing made that their failings were substantially justified or that other circumstances make such an award unjust.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to object.[124] Failure to timely object will waive the parties' rights to appeal questions of fact unless an extension of time for cause is later obtained.[125] Objections must "identify[ ] those issues on which further review is desired."[126]

---

[120] Dkt. No. 74.

[121] Dkt. No. 1-1.

[122] *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817-18 (8th Cir. 2001).

[123] Dkt. No. 74.

[124] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[125] *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990) (per curiam); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986).

[126] *Nash*, 781 F.2d at 667 (quoting *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

DATED this 8th day of September, 2025.

BY THE COURT:

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**