UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| WILLARD E. SMITH,<br><br>        Plaintiff,<br><br>vs.<br><br>KATHLEEN J. SMITH,<br><br>        Defendant. | 3:22-CV-03011-RAL<br><br><br>OPINION AND ORDER ADOPTING<br>REPORT AND RECOMMENDATION AND<br>GRANTING MOTION TO DISMISS AND<br>FOR SANCTIONS |

Plaintiff Willard E. "Bud" Smith ("Bud") started this lawsuit in May of 2022 against his sister Defendant Kathleen J. "Kathy" Smith ("Kathy"), alleging that purchases of land in 1995 and 1997 were in constructive or implied trust for Bud, that Kathy's sale of some of that land in 2005 was to benefit Bud, and that Kathy's failure to give an accounting in or around early 2022 triggered a claim for breach of implied trust. In the three years leading up to this point, Bud has failed to engage properly in discovery or fully comply with orders compelling him to do so. After two orders compelling Bud to produce discovery and incomplete compliance after two and a half months, Kathy moved for a dismissal under Rules 37 and 41 of the Federal Rules of Civil Procedure. Doc. 74. Magistrate Judge Mark A. Moreno issued a Report and Recommendation that Kathy's motion for dismissal be granted under Rule 37(b). Doc. 94. Bud now objects to the Report and Recommendation. Doc. 95. Having reviewed the record de novo in light of Bud's objections, this Court adopts the Report and Recommendation, Doc. 94, and grants Kathy's Motion to Dismiss, Doc. 74.

1

## I.    Summary of Facts and Issues in the Case

In 1972, Bud and his brother purchased land in Stanley County, South Dakota, on a Contract for Deed. Doc. 1-1 at 3; Doc. 5 at 3. According to Bud's complaint, in 1995, Bud "invested his own funds" and worked with a lienholder to avoid foreclosure and purchased the property but made his sister Kathy purchaser on the contract. Doc. 1-1 at 3–4, 8. Kathy's version of events is that she purchased the land to avoid foreclosure. Doc. 5 at 3.

Around this same time, foreclosure proceedings threatened the loss of the family farmland located in Lyman County, South Dakota. Doc. 1-1 at 3–4; Doc. 5 at 2. Bud claims that he worked with the foreclosing party and provided consideration to purchase the land in 1997, again making Kathy the purchaser on the contract. Doc. 1-1 at 3–4, 19. Kathy's version of events is that she purchased that land in 1997. Doc. 5 at 2–3. Over the next few years, Bud farmed both the Stanley County and Lyman County ground and allegedly purchased equipment to do so, which he also put in Kathy's name. Doc. 1-1 at 4, 36; Doc. 5 at 3. Bud claims that Kathy owned the real property and machinery "as Trustee" or as Bud's agent. Doc. 1-1 at 4, 6. Kathy disagrees and no written trust agreement or other documentation between Bud and Kathy has surfaced in this case. Bud's contentions put his income and finances during the 1990s in the center of this dispute.

Bud claims that he made all payments on the equipment, installment payments on the land, and paid for all farming related expenses. Id. In 2005, Bud stopped farming and directed Kathy to sell the Stanley County property and all machinery and equipment and to lease the Lyman County land. Doc. 1-1 at 6; Doc. 5 at 3. Bud claims that he received $45,000 in remaining proceeds of the Stanley County sale and most of the proceeds of that sale and from the Lyman County lease were applied to the balance owed under the two contracts for deed. Doc. 1-1 at 6; Doc. 5 at 3. Kathy retained some of the Lyman County lease proceeds, but Bud claims that it was

to compensate her as his Trustee or agent. Doc. 1-1 at 4, 6. Kathy disagrees. Doc. 5 at 3. Bud's allegations make how his tax returns treated equipment payments, installment payments on land, and farm expenses from 1995 to 2005 relevant to their dispute.

Bud, after not getting information he wanted from Kathy, sent a letter on January 21, 2022, purporting to terminate Kathy from her position as trustee. Doc. 1-1 at 6. Bud then filed this suit in May 2022 in the Sixth Judicial Circuit Court of South Dakota requesting that an accounting be made and the Lyman County land be transferred to him. Doc. 1-1 at 2, 7. Kathy removed the case to the United States District Court for the District of South Dakota, Doc. 1, and filed a Motion to Dismiss, Doc. 4, and a supporting brief, Doc. 5, arguing that Bud's suit was time barred under the applicable statute of limitations. This Court, taking the allegations in the light most favorable to Bud at the time, denied the Motion to Dismiss and concluded that Bud had plead an action for constructive or implied trust under South Dakota law. Doc. 17. This Court was unable to rule on the Complaint alone that the six-year South Dakota statute of limitations applicable to breach of trust claims had run on the claim. Id.

## II.   Legal Standard

This Court reviews a report and recommendation under the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v.

3

Murrillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S.

140, 150 (1985)). This Court has conducted a de novo review of the record and Bud's objections.

## III.    Analysis

### A.  Rule 37(b) Standard

"Under Federal Rule of Civil Procedure 37(b)(2)(A), the district court may impose

sanctions for discovery violations, including dismissal of the action in whole or in part." Schubert

v. Pfizer, Inc., 459 F. App'x 568, 572 (8th Cir. 2012) (per curiam). "[D]ismissal may be considered

as a sanction only if there is: (1) an order compelling discovery; (2) a willful violation of that order;

and (3) prejudice to the other party." Keefer v. Provident Life and Acc. Ins. Co., 238 F.3d 937,

940 (8th Cir. 2000) (citing Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000)). "[B]efore

imposing the sanction of dismissal, fairness requires a court to consider whether a lesser sanction

is available or appropriate." Keefer, 238 F.3d at 941. "When a litigant's conduct abuses the

judicial process, the remedy of dismissal is within the inherent powers of the court." Id. (citing

Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir. 1999)). "Likewise, dismissal of a party's

claims may be appropriate when a party demonstrates a blatant disregard of the Court's orders and

the discovery rules, which prevents the opposing party from fairly litigating its case." Atmosphere

Hosp. Mgmt., LLC v. Curtullo, Civ. No. 13-5040, 2015 WL 4600372, at *9 (D.S.D. July 29, 2015)

(cleaned up and citation omitted).

### B.  The Criteria for Dismissal for Violating Discovery Orders

#### 1.  Order Compelling Discovery

Judge Moreno handled the discovery motions and entered three orders to compel Bud to

engage in discovery, the first on October 16, 2023; the second on April 17, 2025; and the final one

during the show cause hearing on July 24, 2025. Doc. 38; Doc. 61; Doc. 94 at 8. Bud does not

4

contest that three orders compelling discovery entered and does not argue that he timely complied with them. Doc. 95 at 2. This Court finds the first element to dismiss under Rule 37(b) to be satisfied.

## 2. Willful Violation

Bud contests that his violation of discovery orders was willful. Doc. 95 at 2. "As used in the context of Rule 37(b), willful implies a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance." Coral Grp., Inc. v. Shell Oil Co., 286 F.R.D. 426, 436 (W.D. Mo. 2012) (cleaned up and citation omitted). "[D]ismissal with prejudice for failure to comply with discovery rules is an extreme sanction, often reserved for willful or bad faith default." Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983) (per curiam). "[A] deliberate default suffices." Id. "[D]eliberateness includes failure to respond to discovery requests, even with extensions, and failure to provide full information after a court order." Id. A party that has "repeatedly failed to produce discovery in response to counsel's repeated requests and court orders" is sufficient to establish a willful violation. Coop. Fin. Ass'n, Inc. v. Garst, 917 F. Supp. 1356, 1375 (N.D. Iowa 1996). "Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." Lee v. Max Intern., LLC, 638 F.3d 1318, 1322 (10th Cir. 2011).

Bud objects to Judge Moreno's finding that "Plaintiff and counsel have 'repeatedly failed to engage in the case, stonewalled discovery, and flouted Kathy's continued requests for Bud's tax returns and other information.'" Doc. 95 at 2 (quoting Doc. 94 at 12). Bud asserts that he has appeared at hearings, participated in mediation and depositions, and made efforts to comply with court orders. Id. Bud contends his conduct is not as severe as conduct in EDF Renewables Distributed Solutions, Inc. v. Southard, "where none of the ordered discovery ha[d] been produced,

5

the party failed to appear for multiple hearings and ordered fees and costs ha[d] not been paid."
Doc. 95 at 2 (citing No. 19-cv-1588, 2020 WL 5913520 (D. Minn. Oct. 6, 2020)).

The record supports Judge Moreno's finding that Bud's conduct in refusing and delaying
production of his tax returns as requested and ordered was willful; Judge Moreno's Report and
Recommendation accurately details Bud's conduct during the pendency of the case in withholding
his tax returns. Doc. 94 at 2–6, 9–12. Kathy first requested Bud's tax returns on November 1,
2022. Doc. 26-1 at 7. Judge Moreno granted Kathy's motion to compel on October 16, 2023,
requiring production by November 15, 2023. Doc. 38. Judge Moreno reasoned that Bud willfully
withheld discovery because the conduct occurred over the course of two years. Doc. 94 at 9.
During that time, Bud changed his story from 1) his accountant having his tax returns,[1] 2) his
counsel having his tax returns, 3) his tax returns being destroyed in his house by Hurricane Katrina
(which occurred in 2005), and 4) Kathy possessing some of his tax returns in a trash bag at her
house which he had rescued. Id. at 9–10; Doc. 29 at 5; Doc. 50-3 at 4; Doc. 60 at 1. Yet, Bud
testified at his deposition on September 17, 2024, that there was no reason his tax returns could
not be produced. Doc. 94 at 9; Doc. 50-3 at 4. Eric Hanson, Bud's expert, testified in his
deposition that he believed he had all of Bud's tax returns from 1987 to 2021. Doc. 94 at 9; Doc.
50-8 at 3. During the second motion to compel hearing in February 2025, Bud's counsel admitted
they did not obtain the outstanding returns despite Judge Moreno previously ordering him to
promptly request the tax returns from the IRS. Doc. 94 at 10.

Judge Moreno detailed other reasons to conclude why Bud's conduct was willful, including
but not limited to Bud lying about possessing communications with his now deceased sister Connie

---

[1] Bud later conceded in testimony that he had not used an accountant in at least a decade. Doc. 50-3 at 4.

relating to claims in the case to "get a rise out of Kath[y]." Doc. 53 at 3; Doc. 94 at 3. Bud's willfulness in refusing to engage in proper discovery includes selectiveness in what to produce. Despite Kathy's request that Bud produce "[a]ny and all documents or communications referring or relating to" the designated properties, Bud produced only select emails to Connie. Doc. 26-1 at 6; see Doc. 26-3. Kathy independently discovered an email forwarded to Connie from Bud dated September 18, 2016, stating in part:

> [S]tart thinking about my suit against Kathy! This is what I think we sue her for fraud, conspiracy to commit fraud, conversion, breach of agreement, breach of fiduciary duty, promissory estoppel and unjust enrichment, you can find some more things to add. We name her but add two unnamed coconspirators. We give a list of who we are going to depose, first Kathy, we have the list of 360 degree questions and she'll freakout . . . . It will be over before it starts. . . .

Doc. 49-1 at 1. This not only suggests improper motives and strategy from the outset, but also undermines Bud's assertion that he did not realize Kathy considered the property to be hers, rather than held in trust for Bud, until 2021.

### 3. Prejudice

Bud objects to Judge Moreno's finding that Kathy suffered prejudice from his discovery shenanigans. Doc. 95 at 3. "In the context of Rule 37(b)(2) motions 'prejudice' exists if the failure to make discovery impairs the opponent's ability to determine the factual merits of the party's claim." Avionic Co. v. Gen. Dynamics Corp., 957 F.2d 555, 559 (8th Cir. 1992). Additionally, causing an opposing party to continually ask for discovery and expend costs to obtain compliance constitutes prejudice. See Schoffstall, 223 F.3d at 824; Coral Grp., 286 F.R.D. at 436.

Bud objects to the conclusion that "Bud has prejudiced Kathy impairing her ability to investigate his claims and prepare a defense, by causing her to incur unnecessary expenses to obtain his tax returns and other discovery, and by prolonging this case." Doc. 95 at 3 (quoting Doc. 94 at 13). Bud asserts that Kathy "is not without the means to effectively counter the

Plaintiff's position on that issue." Id. Bud asserts that the missing tax returns would not provide any necessary evidence because the years relevant to this case are 1991 to 2005, for which he has produced most of the returns for. Id. Bud admits his delay in the litigation and contends that delay alone is not sufficient to show prejudice. Id. at 4 (citing Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 785 (8th Cir. 1998)).

Ample grounds support Judge Moreno's conclusion that Bud prejudiced Kathy by failing to produce still-missing tax returns for relevant years. Doc. 94 at 13. Bud claims the property was being held by Kathy under an implied trust for his benefit. Doc. 1-1 at 2. Judge Moreno reasoned the missing tax returns are material to this claim for multiple reasons. Doc. 94 at 13–14. The returns contain information regarding Bud's income and expenses, which is critical to the merits of Bud's claim that he paid for the property and to Kathy's statute of limitations defense. Id. at 13. Kathy requested Bud's tax returns from 1995 to present. Doc. 26-1 at 7. Bud does not dispute that these tax returns are relevant to the lawsuit, and indeed they are relevant to whether Bud had the financial ability to buy land and farming equipment in Kathy's name, as well as how he treated income and expense during the time of sale of some of the land and the duration of the implied trust. Bud's continual delay in obtaining the missing returns seems to have resulted in some of the tax returns no longer being available through the IRS. Id. at 13–14. Bud has prejudiced Kathy by impeding her from determining the factual merits of her own defense and Bud's claim against her.[2]

Eighth Circuit cases have concluded that causing a party to "hound" another for discovery materials, thereby increasing expense to obtain compliance with discovery requests, may constitute prejudice. See Schoffstall, 223 F.3d at 824; Coral Grp., 286 F.R.D. at 436. Here, Bud's counsel

---

[2] This Court will not reiterate the sensible reasons that Kathy explained for why Bud's returns are critical in discovery and the absence of their production is prejudicial. Doc. 87 at 12–14.

failed to reply to numerous emails from Kathy's counsel, see, e.g., Doc. 58-3, and Bud has delayed to partially comply and failed to completely comply with all orders of the court, causing Kathy to bring multiple motions to compel and for sanctions, Docs. 24, 47, 74. The record supports Judge Moreno's conclusion that Kathy has been prejudiced by Bud and his counsel's discovery conduct.

### C. Lesser Sanction

Judge Moreno recommended granting Kathy's Motion to Dismiss, rather than a lesser sanction. Doc. 94 at 20. Bud objects to the failure to impose a lesser sanction under Rule 37(b)(2), such as negative inferences, foreclosure from using material at trial, or establishing facts as to Bud's income for the missing years. Doc. 95 at 4.

The Tenth Circuit in Lee v. Max International, LLC, and elsewhere has set forth factors to consider when determining if dismissal is an appropriate sanction under Rule 37(b)(2)(A). 638 F.3d at 1323. These factors include: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions." Id. (quoting Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992)). The Eighth Circuit appears not to have articulated factors to consider, but those established by the Tenth Circuit provide a useful rubric to evaluate the propriety of the extreme remedy of dismissal versus a lesser sanction.

The degree of actual prejudice to Kathy is substantiated above and in Judge Moreno's Report and Recommendation, Doc. 94. Bud has been ordered to produce the relevant discovery three times now and still has not fully complied, thereby interfering with the judicial process. Indeed, Bud's delays in discovery has led to six continuances and pendency of this case for over three years. Bud's culpability is covered above in the discussion of willfulness and in Judge

9

Moreno's Report and Recommendation, Doc. 94 at 8–12. The ongoing delays, failures to communicate, inconsistent stories, and multiple orders demonstrate Bud's culpability. Judge Moreno previously warned Bud "the repercussions may be steep" if he were to fail to comply with the second order, albeit Judge Moreno did not explicitly mention possible dismissal. Doc. 61 at 13. Yet, the Federal Rules of Civil Procedure do allow for possible dismissal, and even after Kathy moved for dismissal as a sanction, Bud did not fully comply, nor has he still, with the court-ordered discovery.

This Court has considered the efficacy of a lesser sanction. Bud suggests precluding use of his income for the missing years, but that may well and appears to benefit Bud more than Kathy. Doc. 95 at 5. The alternative negative inference from Bud's failure to produce tax returns would be that Bud lacked income in the 1990s to fund Kathy's purchases of the land or assets. See id. That negative inference would be fatal to the merits of Bud's case. Bud has not suggested any viable and appropriate lesser sanction to what Judge Moreno recommends.

### D. Award of Attorney Fees

Judge Moreno concluded that an award of $11,161.62—a lesser amount than Kathy sought—was a reasonable and just expense for Bud and his counsel to reimburse Kathy for her expense in bringing the most recent round of motions to compel, for sanctions, and for dismissal. Doc. 94 at 18–19. Bud objects to this amount arguing that this Court should further reduce the number of hours to remove allegedly excessive and redundant time. Doc. 95 at 6 (citing J.V. & Sons Trucking, Inc. v. Asset Vision Logistics, LLC, No. 20-cv-2538, 2025 WL 999732, at *1 (D. Minn. Apr. 3, 2025)).

Judge Moreno already approved attorney Brost's rate of $290.00 per hour with no objection from Bud. Doc. 94 at 18. Judge Moreno reduced attorney Roche's hourly rate to $350.00 from

$385.00. Id. Bud does not quibble with these hourly rates. Doc. 95. Judge Moreno accounted for the overlap between Kathy's last four briefs and reduced the award accordingly, from the $13,817.68 down to $11,161.62. Doc. 94 at 18–19. This Court finds Judge Moreno's calculation to be reasonable based upon the review of the record. Bud's objection to the monetary amount of sanctions is overruled.

**IV.    Conclusion**

Dismissal of a case for a violation of court orders involving discovery is a rare sanction. Judge Moreno described why this is one such rare case and on de novo review following Bud's objections, this Court does not disagree. Therefore, it is

ORDERED that Plaintiff's objections to Report and Recommendation on Motion to Dismiss or for Sanctions, Doc. 95, are overruled. It is further

ORDERED that the Report and Recommendation on Motion to Dismiss and for Sanctions, Doc. 94, is adopted. It is finally

ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 41 or Alternatively, Defendant's Second Motion for Sanctions, Doc. 74, is granted.

DATED this **30**ᵗʰ day of September, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

11